IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERITAGE BUILDING GROUP, INC., | : | |
| COUNTRY GREENE ESTATES, L.P., | : | |
| CHARLES C. STURGES, | : | |
| RICHARD C. SMITH, | : | |
| LAWRENCE A. WARGO and | : | |
| RICHARD R. CARROLL, JR., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 95-4424 |
| | : | |
| PLUMSTEAD TOWNSHIP, PLUMSTEAD | : | |
| TOWNSHIP BOARD OF SUPERVISORS, | : | |
| JAMES L. YOST, GEORGE L. CAPELL and | : | |
| WILLIAM R. SCHUTT, individually and in their | : | |
| respective official capacities as Members of the | : | |
| Plumstead Township Board of Supervisors, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                         **AUGUST 26, 2011**

Presently before the Court is Petitioners, Plumstead Township, Plumstead Township Board of Supervisors, James L. Yost, George L. Capell, and William R. Schutt's (collectively, the "Township"), "Petition to Enforce Stipulation of Settlement and Consent Order" against Plaintiffs, Heritage Building Group Inc. ("HBG"), Country Greene Estates, L.P. ("CGE"), Charles C. Sturges ("Sturges"), Richard C. Smith ("Smith"), Lawrence A. Wargo ("Wargo"), and Richard R. Carroll, Jr. ("Carroll") (collectively, the "Respondents").[1] For the reasons set forth

---

[1] HBG is a Pennsylvania corporation. Sturges is the Chief Executive Officer of HBG. Wargo is Vice President of HBG. Carroll is President of HBG. (Stipulation of Facts ¶¶ 2, 4, 5, 6.) The parties have also stipulated that Smith has no interest in the entities and properties which are the subject matter of the Township's Petition, and he is not a party to these proceedings. (Id.

below, the Petition will be denied.

I.  BACKGROUND

On July 18, 1995, Respondents filed a Complaint in this Court instituting the above-captioned matter (the "Federal Civil Rights Action").  On July 24, 1997, the parties to this action entered into a Stipulation of Settlement and Consent Order ("Settlement").  The Honorable James McGirr Kelly approved and entered the Settlement Stipulation as an Order of the Court on July 30, 1997.  (Petition, Ex. A.)  On February 26, 2007, seven procedural challenges ("Challenges") were filed by seven different landowners (the "Challenge Applicants")[2] with the Plumstead Township Zoning Hearing Board (the "ZHB").  The ZHB is currently holding hearings on five of the Challenges, the other two having been voluntarily withdrawn.[3]

The parties state in their "Stipulation of Facts and Admission of Documents" that HBG is the developer of the properties associated with each of the five Challenges filed with the ZHB, and that "[t]here is no written agreement between HBG and the owners of the various properties involved in these Challenges to have HBG develop these various properties.  These agreements are oral."  (Stipulation of Facts ¶ 12.)  Paragraph 11 of the Settlement (the "Settlement Stipulation") states the following:

---

at ¶ 70.)

  [2]As will be discussed, infra, there is an issue whether these Challenge Applicants are "entities" of the Respondents under the Agreement.

  [3]As of June 24, 2011, the ZHB has held seventeen hearings on the Challenges: June 12, 2007, July 24, 2007, September 6, 2007, September 25, 2007, November 14, 2007, March 26, 2008, May 6, 2008, February 26, 2009, March 26, 2009, August 20, 2009, April 1, 2010, May 18, 2010, July 8, 2010, January 19, 2011, March 29, 2011, April 20, 2011, and June 17, 2011. (Petition, Exs. D, F, H, J, and K.)

> Except for the subject matter of this Stipulation, plaintiffs for themselves and their respective heirs, representatives, successors, assigns, affiliates, officers, directors, employees, shareholders, partners and agents hereby remise, release and forever discharge the defendants and their respective heirs, representatives, successors, assigns, officers, employees and agents, of and from any and all claims, demands, liabilities and causes of action arising prior to the date hereof, whether known or unknown, in law or equity, including all prior or pending litigation between the parties or their affiliates, in the Court of Common Pleas of Bucks County, Pennsylvania, which the plaintiffs now have, or may have or can have against the defendants by reason of any matter, cause, action or thing whatsoever occurring prior to the date hereof, including specifically, but without limitation, any and all subject matters and claims (including any claims for attorneys' fees and costs), relating to the above-captioned litigation.

(Petition, Ex. A.)

The Township asserts that under the Settlement Stipulation, HBG, Sturges, Wargo, and Carroll released the Township from any and all claims or causes of actions, known or unknown, they or their "representatives, successors, assigns, affiliates, officers, directors, employees, shareholders, partners and agents" may have had against the Township as of July 24, 1997. The Township further asserts that on February 26, 2007, "certain heirs, representatives, successors, assigns, affiliates, officers, directors, employees, shareholders, partners and agents" of the Respondents whom the Township has labeled the "Heritage Entities" filed the seven procedural challenges against the Township alleging that "all of the Township's zoning ordinances and amendments adopted prior to July 24, 1997, were procedurally defective and thus void ab initio."[4] (Petition at 3.) The Township argues that under the Settlement Stipulation, the

---

[4]The void ab initio doctrine is a longstanding legal doctrine which essentially stands for the proposition that an ordinance or statute held unconstitutional is considered void in its entirety and inoperative as if it had no existence from the time of its enactment. Glen-Gery Corporation v. Zoning Hearing Board of Dover Township, 907 A.2d 1033, 139 (Pa. 2006).

Respondents released the Township from any procedural challenges against ordinances and ordinance amendments enacted and in effect on or prior to July 24, 1997, and that since these Heritage Entities' Challenges involve allegations that ordinances and amendments enacted from 1964 through the present, including all those in effect as of July 24, 1997, that the filing of these Challenges constitute violations of the Settlement Stipulation.

On November 10, 2010, the Township forwarded a letter to counsel representing the Challenge Applicants demanding that they agree that their Challenges are limited to ordinances and ordinance amendments that were adopted and enacted subsequent to July 1997 in accordance with the release provision of the Settlement Stipulation. In a letter dated November 16, 2010, the Challenge Applicants refused to agree to limit their Challenges in this manner.

Specifically, with regard to the Challenge Applicants, the Township alleges that the Challenges raised by four parties before the ZHB- Heritage Village, LLC ("Heritage Village"), Fieldstone Farm of Sladek Road ("Fieldstone Farm"), Heritage Commons, LLC ("Heritage Commons"), and Grandview Investors, LLC ("Grandview Investors")- against certain Township ordinances are barred by the Settlement Stipulation. The Township argues that these entities are "affiliates subject to the release within the 1997 Consent Order in that the principals of Heritage Building Group, Inc., Charles C. Sturges, III, Lawrence A. Wargo and Richard R. Carroll, Jr., are either owners or beneficiaries of each of the entities, and as a group exercised complete control over the entities' activities, including the filing of the procedural challenges." (Supplemental Brief at 7.)

Generally, the Respondents offer three arguments why the Settlement Stipulation should not be enforced: (1) the parties involved in the underlying Challenges before the ZHB were not

4

parties to this litigation and are not parties to the Settlement Stipulation; (2) this Court does not have and never had jurisdiction over the Challenge Applicants; and (3) the Settlement Stipulation only relates to claims against the Township "arising prior to the date" of the Settlement, and that the Challenges accrued and arose after execution of the Settlement Stipulation in July of 1997, "as they are based on the Pennsylvania Supreme Court's landmark September 28, 2006 decision" in Glen-Gery, 907 A.2d at 1033. (Resp. at 4.) Oral argument was heard on the parties' positions on June 27, 2011.

## II.  DISCUSSION

### A.  Jurisdiction and the Relationship of the Respondents and the Challenging Entities

The Township asserts that its Petition properly raises issues coming within this Court's retained jurisdiction over the parties, and the subject matters of the Settlement Stipulation. The Respondents state that the Township bases this argument on the "bald assertion" that the entities pursuing the Challenges ("Challenge Applicants") before the ZHB are "affiliated parties" to the Settlement Stipulation and bound by it. (Reply Brief at 2.) Respondents argue that the Challenge Applicants are not and never were their "affiliates," and thus, were never parties to this case, and accordingly, do not come under the jurisdiction of this Court. (Id.)

In Pennsylvania, general releases are interpreted according to principles of contract construction. Carcaise v. Cemex, Inc., 200 Fed. Appx. 116, 125 (3d Cir. 2006); see also Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885 (3d Cir.1975). In Three Rivers Motors, the Third Circuit endorsed the "rule of construction" that releases should be construed narrowly, i.e., that "words of a release should not be construed to extend beyond the express consideration

mentioned so as to make a release for the parties which they never intended nor contemplated." Id. at 895-96. "A release covers only those matters which may fairly be said to have been within the contemplation of the parties when the release was given." Restifo v. McDonald, 230 A.2d 199, 201 (Pa. 1967); see also Bowersox Truck Sales and Service, Inc. v. Harco Nat. Ins. Co. 209 F.3d 273, 279 (3d Cir. 2000). "[T]he general rule for construction of releases is that the intention of the parties must govern, but this intention must be gathered from the language of the release." Id.; Three Rivers Motors Co., 522 F.2d at 892.

      Here, paragraph 14 of the Settlement states that this Court would retain "jurisdiction over the parties and the subject matter of this Stipulation for the purposes of implementing and enforcing the contractual settlement terms set forth herein." (Petition, Ex. A.) We are of the opinion that it was the intention of the parties when construing this language of the Agreement that this Court retain jurisdiction over the issues raised concerning the enforcement of this current Petition.

      As to the issue whether the Challenge Applicants are "affiliates" of the Respondents, and thus, parties under the Settlement Stipulation, the Respondents argue that the Township cannot establish that the Challenge Applicants are "affiliates," and that the Settlement Stipulation does not define "affiliate." On the other hand, as noted, the Township asserts that the Challenge Applicants are "affiliates" of the named parties to the Settlement and are, thus, subject to the Settlement Stipulation.

      In support of its position, the Township attempts to offer evidence that Sturges, Wargo and Carroll owned or controlled each of the entities that filed the Challenges. According to the Township, this evidence was elicited during the numerous hearings that have already been held

by the ZHB on these Challenges. The Township argues that the Respondents' position suggests that while they are directly barred from filing certain claims and taking certain actions by the 1997 Settlement Stipulation, they could create and direct separate entities to file these claims and take the actions they are directly prohibited to do by the Settlement Stipulation allowing them to completely circumvent and void it. (Supplemental Brief at 10-11.)

It must first be noted that our record does not contain transcripts of the hearings before the ZHB in which the Township asserts that testimony was elicited concerning the relationships of the Respondents and the Challenge Applicants. As will be discussed, <u>infra</u>, for reasons other than the relationship(s) between the Respondents and the Challenge Applicants, we find that the Settlement Stipulation should not be enforced against the Respondents. Accordingly, we did not hold an evidentiary hearing to elicit testimony from Respondents regarding this issue, and do not make a determination concerning such relationships.

### B.     Past Conduct of the Parties

Respondents assert that the course of dealings between the Township and the Respondents during more than a decade of litigation separate and apart from the pending Challenges before the ZHB[5] is evidence "that the separate entities and properties in the on-going procedural challenges were never intended to be, and are not, covered by the provisions of the Consent Order, and the Townships's Petition can and should be denied on this basis alone." (Reply Brief at 6.) Respondents argue that if the "Township really believed that the Consent

---

[5]The parties have stipulated that since the execution and entry of the Settlement Stipulation, HBG and Fieldstone have been engaged in at least fourteen (14) "litigation matters" against the Township in the Bucks County Court of Common Pleas separate and apart from the current Challenges, including eleven (11) cases in which the Township's current counsel was representing the Township. (Stipulation of Facts ¶ 66.)

Order barred such actions, it would have interposed the Consent Order as a bar and defense to such actions and zoning challenges, especially in the eleven cases in which present counsel for the Township have been representing the Township over the past decade." (Id. at 5.)  They argue further that "[t]he fact that the Township never did so is strong and compelling evidence that <u>none</u> of the signatories to the Consent Order intended its provisions to be interpreted or applied in the manner the Township now asserts." (Reply Brief at 5.)  The Respondents also contend that "[t]his conclusion is further buttressed by the equally strong and compelling fact that over the course of the first four years of litigating the challenges before the ZHB, the Township never raised the Consent Order as a bar or defense to the procedural challenges, or even moved to dismiss the proceedings on such basis." (Id.)

The Township responds that it has not requested this Court to order the "Heritage Affiliates" to discontinue their Challenges as to post-1997 ordinances.  It argues that the "14 land use litigation matters" which have been "initiated against it since 1997 by Heritage Building Group or an Affiliate have no bearing on the issue before this Court since they were not challenges to pre-1997 ordinances, but were subdivision appeals, special exceptions, or variances to ordinances in effect post-1997." (Rebuttal Brief at 4.)

As noted above, the intention of the parties govern the construction of releases.  <u>Three Rivers Motors Co.</u>, 522 F.2d at 892.  Moreover, "[t]he past dealings of contracting parties pursuant to an agreement are probative of the parties' intent." <u>Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.</u>, 989 F.2d 132, 137 (3d Cir. 1993); <u>see also</u> Restatement (Second) of Contracts § 223(2) (1981); <u>Cities of Campbell v. Federal Energy Regulatory Comm'n</u>, 770 F.2d 1180, 1191 (D.C. Cir. 1985); <u>Pension Fund for Nursing Homes</u>

8

and Health Care Employees--Philadelphia and Vicinity v. Resthaven Nursing Ctrs., No. 07-0313, 2008 WL 2132097, at * 1 (E.D. Pa. May 20, 2008). "Evidence of a course of conduct is particularly compelling when it occurs over a substantial time period." Teamsters Indus. Employees Welfare Fund, 989 F.2d at 137; see also Old Colony Trust Co. v. City of Omaha, 230 U.S. 100, 118 (1913) ("the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence").

Here, we agree with the Township that it is irrelevant to the issue before us that it never raised the Settlement Stipulation in the "14 land use litigation matters" which had been brought against it since 1997 by HBG or any of its "affiliates" in the Bucks County Court of Common Pleas if none of these matters involved pre-1997 ordinances.[6]  However, we cannot agree that it is irrelevant to the issue before us that the Township had never raised the Settlement Stipulation as a bar in any of the 13 hearings that its ZHB had held since the Challenges were brought in February 2007 until the Township raised it for the first time in its November 10, 2010[7] letter to HBG counsel demanding that HBG agree that their Challenges are limited to ordinances and ordinance amendments that were adopted and enacted subsequent to July 1997.

We are of the opinion that if the Township did indeed consider the Settlement Stipulation as a bar or defense to any procedural challenges to pre-1997 ordinances by the Respondents or

---

[6]The Respondents have not claimed in any of their briefs that any of these "14 land use litigation matters" before the Bucks County Court of Common Pleas involved pre-1997 ordinances.

[7]See footnote 3.

9

any entities that it considered entities of any of the Respondents, it would have certainly raised the Settlement Stipulation before any hearings began on the Challenges in front of the ZHB, and/or, at the very least, in the initial round of hearings. The Township's course of action in writing a letter to the Respondents in November 2010 asserting that the Stipulation Agreement bars these Challenges, after thirteen hearings had already been conducted and almost four years after the Challenges were filed,[8] indicates a course of conduct on its part that it did not consider the Stipulation Agreement a bar to these Challenge Applicants.

While the parties have also stipulated that the "Township has not commenced its case-in-chief in the hearings on the Challenges," and that the "Township has submitted the Settlement Stipulation as an Exhibit in the hearings on the Challenges" (Stipulation of Facts ¶ 69), the Township has not offered any adequate explanation why it chose not to raise the Settlement Stipulation as a bar or defense in the hearings held before it sent its November 2010 letter to the Respondents. It could be argued that the Township needed to elicit testimony at the hearings to determine the relationship between the Respondents and the Challenge Applicants before it could raise the Settlement Stipulation as a bar. However, the Township acknowledges in its Petition and briefs that it believed as early as March 2008 that the Challenge Applicants were "affiliates" of the Respondents. The Township states that "[a]t hearings which were held before the Plumstead Township Hearing Board on March 26, 2008 and May 6, 2008, Anthony B. Maras, General Counsel for the Heritage Building Group, Inc., testified in detail as to the Heritage

---

[8]The parties have stipulated that "[i]n the four years the Challenges have been pending before the Plumstead Zoning Hearing Board, the Township has never raised the Settlement Stipulation as a defense or bar to the Challenges." (Stipulation of Facts ¶ 69.)

affiliates and the relationship of those entities with the Heritage Plaintiffs referenced in the 1997 Consent Order." (Rebuttal Brief at 8-9.) Despite such knowledge, inexplicably, the Township chose not to raise the Settlement Stipulation as a bar in subsequent hearings before the ZHB. In fact, the parties stipulated that the Township did not raise the Settlement Stipulation as a defense or bar when it filed a motion to dismiss before the ZHB in June 2010.[9]

Based on this history, we find that the Township's failure to raise the Settlement Stipulation as a bar and/or defense for almost four years since the Challenges were filed in February 2007 is strong evidence that the Township did not intend for the Settlement Stipulation to bar the Challenge Applicants from filing the Challenges. However, this is not the sole reason that we find that the Township's Petition must be denied. As will be discussed next, we find that the Glen-Gery decision by the Pennsylvania Supreme Court in 2006 created new causes of action for the Respondents and/or the Challenge Applicants that did not exist in 1997. 907 A.2d at 1033.

### C. New Causes of Action

In Glen-Gery, the court stated that the issue before it was whether the plain language of

---

[9]The parties stipulated that :
> On June 24, 2010, Defendant-Petitioner Plumstead Township filed with the Plumstead Township Zoning Hearing Board a Motion to Dismiss all of the remaining on-going Challenges by letter submission to Richard D. Magee, Jr., Esquire, the Solicitor for the Zoning Hearing Board. The Motion to Dismiss has not been acted on or granted by the Zoning Hearing Board. The Motion to Dismiss seeks the dismissal of the Challenges on the grounds of *res judicata*, laches, and the inapplicability of the *void ad initio* doctrine, but not on the basis of the Settlement Stipulation.

(Stipulation of Facts ¶ 63.)

Section 909.1(a)(2) of the Municipalities Planning Code ("MPC"), 53 P.S. § 10909.1(a)(2),[10] or amended Section 5571(c)(5) of the Judicial Code, 42 Pa.C.S. § 5571(c)(5),[11] " bars a procedural challenge to an ordinance as untimely if no challenge is mounted within thirty days of the 'intended' effective date or, whether an ordinance is rendered void *ab initio* by its procedural defect thereby rendering inapplicable the limitations period." 907 A.2d at 1039. The court concluded that "we find that a claim alleging a procedural defect affecting notice or due process rights in the enactment of an ordinance may be brought notwithstanding the provisions of Section 909.1(a)(2) and Section 5571 (c)(5) because, if proven, the ordinance would be rendered void *ab initio*." Id. at 1035.

The Respondents assert that prior to the Glen-Gery decision, a procedural challenge to the

---

[10]This Section provided in part:

> Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment or adoption which challenges shall be raised by an appeal taken within 30 days after the effective date of said ordinance. Where the ordinance appealed from is the initial zoning ordinance of the municipality and a zoning hearing board has not been previously established, the appeal raising procedural questions shall be taken directly to court.

53 P.S. § 10909.1(a)(2).

[11]This section stated in relevant part:

> Ordinances, resolutions, maps, etc.-Questions relating to an alleged defect in the process of enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision shall be raised by appeal commenced within 30 days after the effective date of the ordinance, resolution, map or similar action.

42 Pa.C.S. § 5571(c)(5) (before amendment).

enactment of a local land use ordinance had to be raised within 30 days of its enactment. They argue that, overturning years of past precedent, the Glen-Gery court held for the first time that a claim alleging a procedural defect in the enactment of a local ordinance could never be time barred because if such a claim is successful, the ordinance is void ab initio, as if it never existed. Respondents, thus, assert that prior to Glen-Gery, it was not possible to raise a procedural challenge to a zoning ordinance beyond 30 days after its effective date, and that Glen-Gery created new causes of action in 2006 that the Challenge Applicants subsequently brought against the Township that are not barred by the Settlement Stipulation.

 The Township argues that Glen-Gery did not create new causes of action to invalidate township ordinances under the "void ab initio" doctrine because the "Pennsylvania Supreme Court has recognized a landowner's cause of action against a municipality to invalidate a township ordinance on procedural due process grounds under the void ad initio doctrine since at least 1933." (Rebuttal Brief at 13.) The Township has cited a number of cases to support its position. We disagree, and we will discuss each in turn.

 The Township first cites Fierst v. William Penn Mem'l Corp., 166 A. 761 (Pa. 1933). In Fierst, the court invalidated a township ordinance which did not include in the publication of that ordinance a proposed new zoning map. We first note that the Fierst court did not specifically address the doctrine of void ab initio, but rather only held that "the publication of municipal ordinances is mandatory, and, until complied with as the law directs, such ordinances are ineffective." 166 A. at 763. Second, the issue in Fierst did not involve the statutory bar involved here for bringing procedural challenges to zoning ordinances.

The Township asserts that the Pennsylvania Supreme Court also addressed the void ab initio doctrine in Kelly v. Philadelphia, 115 A.2d 238 (1955).  In Kelly, the city had passed an ordinance without the required fifteen days notice prior to the public hearing and without the vote of three-fourths of the members of city council.  The court held that the city's failure to follow the express provisions of the law for advertising made the ordinance invalid.  However, contrary to the Township's assertion, the court did not specifically discuss the "void ab initio" doctrine in making its ruling.  In addition, like Fierst, Kelly also did not involve the issue central in Glen-Gery- the statutory bar for bringing procedural challenges to zoning ordinances.

The Township next cites West Conshohocken Borough Appeal, 173 A.2d 461 (Pa. 1961). There, the court found that an annexation ordinance that was not recorded in the ordinance book of the borough, as required by the Borough Code, within 30 days of its passage, was invalid. Again, we are of the opinion that this case does not support the Township's position since, like Fierst and Kelly, it does not specifically address the doctrine of void ab initio or the 30-day statute for procedurally challenging zoning statutes.

The next decision cited by the Township, Lower Gwynedd Township v. Gwynedd Properties, Inc., 591 A.2d 285 (Pa. 1991), also does not support its position for the same reasons as stated above.  The Township asserts that in this case the "Pennsylvania Supreme Court faced another landowner procedural due process challenge to a municipal ordinance based on the void ab initio doctrine."  (Rebuttal Brief at 14.)  In Lower Gwynedd, a second-class township's attempt to condemn a resident's property was held to be invalid on the ground that the township had failed to satisfy the mandatory publication requirement set out in the second-class township code.  However, like the above-discussed cases cited by the Township, the court never addressed

the void ab initio doctrine, and again the issue addressed is not related to the 30-day statute to challenge a township ordinance as in Glen-Gery.

Lastly, the Township argues that this line of cases was further followed by the Pennsylvania Supreme Court in Cranberry Park Assocs. v. Cranberry Twp. Zoning Hearing Bd., 751 A.2d 165 (Pa. 2000). There, the court held that a township grading ordinance that was never signed, dated, numbered, or recorded was void *ab initio*. We first note that Cranberry Park Associates was decided three years after the Settlement Stipulation at issue was entered into in 1997. In addition, of the cases cited by the Township, this is the first that the Pennsylvania Supreme Court actually determined that a township zoning ordinance was void *ab initio*. Cranberry Park Associates, however, like the other cases cited by the Township did not involve the 30-day statute for procedurally challenging zoning statutes that was at issue in Glen-Gery.

The Township further argues that: "Heritage Building Group and the other Heritage Plaintiffs could have been the Glen-Gery Plaintiffs as of the date of the 1997 Consent Order, but failed to do so. The fact that the Heritage Plaintiffs could have done what Glen-Gery did in 1997 since the void ab initio doctrine was available precludes the current procedural Challenges of Heritage entities to ordinances in effect as of that date." (Rebuttal Brief at 16.) We disagree. In 1997 when the Settlement Stipulation was entered into by the Township and the Respondents, Pennsylvania statutory law clearly barred a procedural challenge to an ordinance as untimely if no challenge was initiated within thirty days of its effective date.[12] As discussed above, the void ab initio doctrine certainly was not the established law in Pennsylvania that the Township claims

---

[12]See footnotes 10 and 11.

that it was. We are, thus, of the opinion that the void ab initio doctrine was not available as an avenue the Challenge Applicants could have pursued in 1997. Moreover, we find nothing in the <u>Glen-Gery</u> decision to suggest that they could have at that time, and it is pure speculation on the Township's part that the Challenge Applicants could have done in 1997 what the <u>Glen-Gery</u> plaintiffs did in 2002. Based on our review of the case law, it is our determination that <u>Glen-Gery</u> was the first Pennsylvania decision specifically holding that a claim alleging a procedural defect in the enactment of a local ordinance could never be time barred because if such a claim is successful, the ordinance is void ab initio.

    Accordingly, we find that Challenge Applicants did not have a cause of action to procedurally challenge pre-1997 ordinances when the parties entered into the Settlement in 1997 because such a cause of action did not exist until <u>Glen-Geary</u> specifically created such in 2006. Thus, the Settlement Stipulation does not bar the Challenge Applicants from challenging the pre-1997 ordinances when they did so in February of 2007. For these reasons, the Township's Petition is denied.

    An appropriate Order follows.